(63 South. 59.)

·No. 19,550.

HARRISON v. GOLDBERG et al.

(June 30, 1913.)

*(Syllabus by the Court.)*

1. LANDLORD AND TENANT (§ 331*)—ACTION BY TENANT—EVIDENCE.

Plaintiff was to cultivate defendant's land as his tenant for a share of the crop. The contract was only partly performed. The work came to a stop, and there was nearly a total loss. The cause of the stopping of the work and the loss of the crop is the question. At the beginning of the year plaintiff was indebted in the sum of $358. His creditor holds his three ·mules and his farming tools in pledge for the amount.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1374–1387; Dec. Dig. § 331.*]

2. LANDLORD AND TENANT (§ 321*)—BREACH BY LANDLORD—WAIVER.

The defendant paid the debt at his instance, and plaintiff went to work on defendant's place. He was allotted land, and shortly after allottment of other land instead was made to him. To this change he did not object until the filing of his suit. He pitched his crop and cultivated it until the end of May, without objecting. He is concluded by silence and acquiescence.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1352; Dec. Dig. § 321.*]

3. LANDLORD AND TENANT (§ 331*)—ACTION BY TENANT—EVIDENCE.

The mules were to be used by plaintiff in cultivating the crop. Defendant avers that plaintiff entirely neglected the crop and the mules. He had, he says, the mules taken care of by another tenant, with the direction to let plaintiff have them to cultivate the place. His contention is sustained by some evidence that the mules were in a starving condition. It may be that the defendant was prompted by the desire to hold them in his possession as security. There was no necessity for subterfuge, for the agreement was that the mules were to remain on the place and work to pay the debt to defendant, which defendant had paid for him. Plaintiff testified, on the other hand, that he would like to continue to work; that the defendant refused to make advances to him. The defendant's position in the answer is that he would have continued to make advances had it not been that plaintiff did not work the crop. There was nothing mentioned about advances in the written contract.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1360–1362, 1379–1387; Dec. Dig. § 331.*]

4. LANDLORD AND TENANT (§ 322*)—CONTRACT FOR ADVANCES—CONSTRUCTION—BREACH BY TENANT.

If a farm owner promises to let a tenant share the advances, without stipulating the time to be made nor the amount, if he finds that because of his tenant's failure to work it is more than probable that his advances will be lost, he may stop advancing.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1353, 1354, 1357; Dec. Dig. § 322.*]

5. LANDLORD AND TENANT (§ 326*)—OBLIGATION OF TENANT.

The tenant left and never returned; according to the contract he was to deliver the cane at the factory. This he entirely failed to do. This is a quarrel between a tenant and

the farmer for whom he worked. Further quarrels should not occur. The demand for good labor is so great that the laborer can always find a way to protect himself, except when he involves himself in debt, as did the plaintiff, too deep for his means; and then if he makes promises and agreements he should adhere to them.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1367–1378; Dec. Dig. § 326.*]

6. LANDLORD AND TENANT (§ 326*)—OBLIGATION OF TENANT.

He should not, as in this instance, violate his agreement by secretly taking the property he promised to let remain on the place and use to make his crop and pay his debt. He should not abandon his work.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1367–1378; Dec. Dig. § 326.*]

7. APPEAL AND ERROR (§ 1010*)—REVIEW OF JUDGMENT—EVIDENCE.

The judge of the district court saw and heard the witnesses and had the opportunity to judge at first hand, and his judgment will not be set aside, unless it is shown that his judgment is clearly against the weight of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982, 4024; Dec. Dig. § 1010.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Action by Lorenzo Harrison against Joseph Goldberg and another. From a judgment for defendants, plaintiff appeals. Affirmed.

J. R. Davis and L. T. Dulany, both of New Iberia, for appellant. Burke, Burke & Smith, of New Iberia, for appellees.

BREAUX, C. J. Plaintiff sued defendant for damages for breach of contract. He became the defendant's tenant for the year 1911. The contract signed by them was written in the usual form. The first party obliged himself to work lands of defendant, without designating in the contract any particular lands on defendant's place. Three mules and field implements, such as harrows, carts, cultivators, and other farming tools were to be supplied by plaintiff. In order to obtain possession of the mules and implements in hands of a third person defendant

had to redeem them from pledge. The three mules and the implements were in the possession of a Mr. Le Jeune, creditor of plaintiff who had them in pledge. He consented to transfer them to the defendant, provided the defendant paid him the amount which was due him by plaintiff. This he did, and Le Jeune delivered the mules. They were taken to defendant's place and used by plaintiff in cultivating his crop on the land of defendant. These mules, it seems, were owned by plaintiff, but they had not been entirely paid for, and he owed other debts to Le Jeune. The whole amount due by plaintiff to Le Jeune was paid and defendant became subrogated, as the transferror, Le Jeune, understood, to his right as his (plaintiff's) former creditor.

It seems the defendant Goldberg thought about the end of May that the crop was anything but promising. The plaintiff, as he thought, neglected his work, and he did not care for and feed his mules, and defendant asserted that the crop was overgrown in grass. The plaintiff, on the other hand, alleged that defendant had promised to advance provisions to him for the year, which he failed to do; that he did make small advances for three or four months of about $6 a month; that he stopped advancing and left plaintiff, plaintiff alleges, without the means to continue in working his crop.

Plaintiff alleged further that defendant at first allotted to him land to cultivate that was fertile, but soon after he had commenced to clear the land defendant stopped him and directed him to work other land selected for him which plaintiff says was not fertile; that it was low, wet, and subject to tidal overflow.

He alleged that he cultivated about 11½ acres of cane and some corn, and continued to work on this crop until June; that he stopped because he had no provisions. He complained that the corn was under water.

Plaintiff urged that, had he been permitted to cultivate the land promised him by defendant, he would have made a good crop. He also avers that his three mules were worth $500; that he sold his hay and corn, sales of which defendant complains, because in need. Plaintiff said that he had a right to sell his corn; that without mules, without provisions, he was unable to continue, and on account of the loss occurring, he should have damages which he fixes at a large amount, over $6,000.

The defendant, Goldberg, controverted these assertions, and said that he had complied with his contract; that he did all that it was possible and reasonable for him to do; that he would have been only too glad to make advances to the plaintiff, if plaintiff had worked; that the plaintiff was very much at fault; that he did not cultivate the crop; that he abandoned it and ran away with the mules and implements; that it is true that he had said to the plaintiff that he would sell the mules to him, but that he expected them to be paid for before completing the sale, but that plaintiff, instead of attending to crop, so as to be able to pay, neglected everything; that the mules were turned out to graze and were in bad condition. Seeing this, he (defendant) placed the mules in the hands of one of his tenants. He directed him to let plaintiff have them whenever he called for them to work his crop. That did not seem to have had any influence on the plaintiff. Several times he spoke to him about the mules and implements on the place and about the necessity of working the crop, without its having any effect on plaintiff.

As relates to the charge that plaintiff was obliged to cultivate other lands than those selected at first, defendant alleged that the second allotment of land he made to plaintiff was accepted by him, and that there were other lands on the place, which he (plaintiff) might have worked.

In regard to the advances the defendant says they were made to plaintiff while he remained on the place, but as he was working outside he made no further advances and took the mules.

Defendant was informed as to the whereabouts of the mules taken by plaintiff. He had them brought back to his place.

Plaintiff obtained a writ of sequestration which was dissolved, and the mules remained in possession of defendant.

[1, 3] Plaintiff sought the defendant, not the defendant the plaintiff, and entered into an agreement whereby he was enabled to settle with a former creditor; that was proper conduct, that is, on part of plaintiff in paying his former creditor. He ought to have done the same with the defendant, the present creditor. We have noted the amount due by plaintiff to the former creditor was fixed, and it was paid by defendant with the consent of plaintiff. They substantially agreed that from the date of the transfer plaintiff was to be the debtor of defendant.

About half the year had passed, the defendant became uneasy about his claim, a little too uneasy.

He stretched his rights very much until the cord nearly broke when he took possession of the mules. Still, he had them in his possession, and he seeks to save the situation by taking the position that it was in order to have them fed. Taken altogether at this point the appearances are against him. All that saves defendant's position is that plaintiff breached his contract by surreptitiously taking the mules.

[4] Defendant stopped making advances is the next complaint. There is nothing in the contract binding the defendant to make advances. His defense is that he would have continued to make advances, if it had not been that plaintiff neglected his crop so much that loss was inevitable. The onus of proof is with plaintiff. Taken altogether un-

der the rules which obtains the weight of testimony preponderates in favor of defendant.

[5, 6] Now, as to plaintiff, he was not as careful as he should have been. He went to work in other fields, apprehending from all appearances that the returns at the end of the year would not be enough to meet his indebtedness to defendant and his expenses.

Crops must be taken care of; they must be worked early and late, in order that a return may be obtained. Half-hearted work will not do. At the end plaintiff did not work at all.

[2] Plaintiff, he says, was compelled to work other lands than those it was originally understood he was to have.

There was at first a misunderstanding about the land he (plaintiff) was to cultivate, and a change of some kind was made. He does not seem to have objected in the least to whatever change was made.

It is now too late to object. It seems to us after having reviewed the whole case that the indebtedness of plaintiff was the cause of the whole trouble.

What prevented plaintiff from saying to his employer at the beginning of the year:

"You have delivered this land to me; I claim it for the year"

—and not complacently accept a change. The fact is that plaintiff wanted to have the mules that defendant had redeemed for him. He was willing to work as long as there was some prospect of his being able to pay for them. He played his mules on the crop and lost them.

[7] The judge of the district court saw and heard the witnesses; he had good opportunity to judge of their credibility and veracity.

It only remains for us to affirm the judgment.

For reasons stated, it is affirmed at appellant's costs.